UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN DELANO DYSTHE II,<br><br>Defendant. | Case No. 6:19-mj-00085-JDP-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT 5<br><br>ECF No. 11 |

Defendant has moved to dismiss Count 5 of the criminal complaint, which charges him with refusing to submit to an evidentiary breath test in violation of 36 C.F.R. § 4.23(c)(2). The court heard oral argument on August 13, 2020, and this matter is now ripe for review.

**Factual background**

The government initially charged defendant with seven counts, one of which the court later dismissed on the government's motion. *See* ECF No. 14 (dismissing Count 6). For purposes of this motion, the court need only consider the first and fifth counts, which are:

> Count 1: Operate a motor vehicle under the influence of alcohol or drugs to a degree that renders the operator incapable of safe operation in violation of Title 36 Code of Federal Regulations § 4.23(a)(l).
> . . .
> Count 5: Refuse to submit to an evidentiary breath test in violation of Title 36 Code of Federal Regulations § 4.23(c)(2).

1

ECF No. 1 at 1.

    The factual allegations laid out in the complaint and accepted as true for the purposes of this motion are as follows:

> On November 12, 2019 at approximately 9:55 p.m. Rangers Justin Fey and Clifton Ashley were on patrol in a marked patrol vehicle traveling eastbound on Ahwahnee Drive. Rangers Fey and Ashley observed a silver Dodge Ram traveling westbound on Ahwahnee Drive approaching the T intersection of Ahwahnee Drive and Village Drive. The operator of the vehicle turned left onto Village Drive, from Ahwahnee Drive, crossing and traveling into the oncoming, northbound, lane of traffic before entering the right, southbound, lane.
> 
> While traveling westbound on Northside Drive, near Bank Three Way, the operator of the vehicle crossed the double yellow line with both left tires. While travelling on Northside Drive, the vehicle speed increased to 36 mph in a posted 25 mph zone. At the intersection of Lower Falls, the operator of the vehicle braked abruptly and turned left into the Yosemite Lodge parking area.
> 
> Ranger Fey initiated a vehicle stop, but the operator of the vehicle continued travelling approximately 200 feet through the parking area before turning and parking in a pedestrian crosswalk.
> 
> Ranger Fey contacted the driver and identified him as Franklin Delano DYSTHE II. Ranger Fey smelled the strong odor of alcoholic beverages coming from inside the passenger compartment of the vehicle. Including DYSTHE there were four passengers inside the van.
> 
> . . .
> 
> Ranger Fey observed DYSTHE's eye lids were drooping and he had a difficult time focusing on Ranger Fey who was standing at the open driver side window. When asked to produce his driver's license and rental agreement DYSTHE explained the rental agreement was on his phone but his phone was out of battery. DYSTHE plugged his phone in to charge it but did not produce his driver's license. After several seconds DYSTHE had to be asked a second time for his driver's license.
> 
> . . .
> 
> Ranger Fey asked DYSTHE to exit the vehicle to speak with him at the bumper of the vehicle. DYSTHE appeared to slide off the driver's seat when exiting the vehicle. Once outside and standing near the bumper of the vehicle, Ranger Fey could smell the distinct odor of alcoholic beverages coming directly from DYSTHE's person and breath. Rangers Fey and Ashley observed DYSTHE had a light purple color to his teeth.
> 
> In response to Ranger Fey's questions DYSTHE stated he had not consumed any alcohol that day and he last consumed alcohol the day prior. Ranger Fey requested DYSTHE participate in Standardized Field Sobriety Tests (SFST) and DYSTHE refused. During his conversation with DYSTHE Ranger Fey observed DYSTHE have a difficult time completing statements and he began fumbling his words. DYSTHE used the truck bed as a railing and leaned on the truck bed for support when he walked to the back of the vehicle and while standing with Ranger Fey at the bumper.
> 
> Ranger Fey asked [a] passenger, seated in the front passenger seat, to turn the vehicle off before placing the keys on the dash. Ranger Fey asked the passenger when he last saw DYSTHE consume an alcoholic beverage, and the passenger stated approximately one hour prior to being stopped.
> 
> At approximately 10:25 p.m. Ranger Fey arrested DYSTHE and transported him to the Yosemite Holding Facility. At approximately 11:00 p.m.

        Ranger Fey requested DYSTHE submit to an evidentiary breath test. DYSTHE refused to submit a breath sample.

ECF No. 1 at 2-3.

**Discussion**

        A pretrial motion to dismiss seeks dismissal on a question of law. *See United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). In ruling on such a motion, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). The court asks only whether a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted).

        Defendant challenges count five of the complaint, which charges him with violating 36 C.F.R. § 4.23(c)(2). This regulation criminalizes refusal to submit to a blood alcohol content ("BAC"), or breathalyzer, test whenever there is probable cause to believe that an individual has violated either of the two provisions of § 4.23(a)—the first of which turns on degree of impairment, the second of which turns on absolute blood alcohol level.[1] Here, defendant

---

[1] The relevant sections of the statute are as follows:

    (a) Operating or being in actual physical control of a motor vehicle is prohibited while:
        (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
        (2) The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive  limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.
    . . .
    (c) Tests.

3

concedes that the rangers had probable cause to believe that he had violated § 4.23(a)(1).[2] Thus, per the text of the regulation, the rangers were authorized to require him to undergo a BAC test, setting up a violation of § 4.23(c)(2) when he refused the test.

Defendant argues, however, that the regulation, the plain text of which he appears to have violated, is unconstitutional as applied. He argues that, properly interpreted, the Fourth Amendment does not permit a search in the form of a BAC test unless there is evidence specifically indicating that defendant's BAC is over the legal limit. Defendant asserts that the government cannot "bootstrap" probable cause for a violation of § 4.23(a)(1) onto § 4.23(c)(2). Instead, he argues that a distinct probable cause finding, based on independent facts, must be made to support the refusal to submit charge in Count 5. Mere evidence of alcohol-impaired driving, he argues (at least where the evidence does not indicate severe impairment), is not closely-enough linked to BAC to permit a search in the form of a breathalyzer test.

Defendant's argument focuses on the distinction between BAC and impairment, and indeed these metrics are not necessarily two sides of the same coin. A particular level of driving impairment is not always associated with a particular BAC; a heavy-drinking alcoholic with a BAC of 0.30% might be able to operate a vehicle without visible impairment while an infrequent drinker with a BAC of only 0.04% might show impaired driving. *See* ECF No. 15 at 6. In

---

> (1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the breath, saliva, or urine for the purpose of determining blood alcohol and drug content.
> (2) Refusal by an operator to submit to a test under paragraph (c)(1) is prohibited and proof of refusal may be admissible in any related judicial proceeding.

36 CFR § 4.23.

[2] Such probable cause, accepting as true the allegations of the complaint, came from defendant's somewhat droopy eyelids, his refusal to submit to field sobriety tests, his difficulty producing his driver's license, his use of the side of his vehicle for balance while walking, the smell of alcohol emanating from his vehicle and person, his fumbling for words, and a report from a passenger that defendant had consumed at least some alcohol in the recent past.

defendant's view, this means that the government did not have a permissible basis to require him to take a breathalyzer test unless it had probable cause to believe that he had violated 36 C.F.R. § 4.23(a)*(2)*, the provision that turns on BAC rather than impairment.

Defendant argues that field sobriety tests—which he refused to undergo—could have supplied the government with better evidence of BAC, since such tests are designed to estimate BAC rather than (as is commonly assumed) degree of impairment. Without the results of field sobriety tests or something similar (or perhaps evidence of *severe* impairment), defendant argues that the government lacked sufficient evidence of an elevated BAC and did not have an acceptable basis for requiring him to undergo BAC testing.

The parties agree on at least the basic legal underpinnings: The Fourth Amendment prohibits unreasonable searches. U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). The administration of a breathalyzer test is a search. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989). Warrants, supported by probable cause, are usually required to conduct a search, but there are exceptions to this requirement, such as for searches incident to arrest. *Kentucky v. King*, 563 U.S. 452, 459 (2011).

The search-incident-to-arrest exception has become a categorical rule: "the mere 'fact of lawful arrest' justifies 'a full search of the person.'" *Birchfield*, 136 S. Ct. at 2176 (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). "It does not depend on an evaluation of the threat to officer safety or the threat of evidence loss in a particular case." *Birchfield*, 136 S. Ct. at 2183. In *Birchfield*, the Supreme Court held that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Id.* at 2184.

*Birchfield* reviewed multiple laws requiring submission to BAC testing in conjunction with valid drunk driving arrests. The Supreme Court summarized the general history of laws prohibiting refusal to submit to testing, *id.* at 2166-70, and explained how, as equipment permitting testing for elevated BAC proliferated, some states set BAC levels above which people were prohibited from driving, *id.* at 2169. In hopes of avoiding penalties under these laws, some

drivers began refusing BAC tests. *Id.* States responded by criminalizing the refusal to undergo these tests. *Id.*

Defendant's argument implies that there is a big loophole in *Birchfield*, and that when the Court approved "warrantless breath tests incident to arrests for drunk driving," *id.* at 2184, it meant only arrests supported by field sobriety tests—or some similar, unspecified BAC-focused tool. But I see no support for this interpretation in *Birchfield* or any other decision of the Court. On the contrary, defendant's argument—which invites me to curtail severely the circumstances in which rangers (and presumably other law enforcement officers) can require a driver to submit to a BAC test—is incompatible with *Birchfield*.

In *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), one of the cases reviewed in *Birchfield*, the Minnesota statute at issue—like 36 C.F.R. § 4.23—created multiple types of drunk driving crimes, Minn. Stat. § 169A.20. Bernard, like defendant, was charged with drunk driving based upon behavioral indicators rather than with driving over a BAC limit, *Bernard*, 859 N.W.2d at 764, and his charge for refusing a breath test was upheld as a constitutional search incident to that arrest, *Birchfield*, 136 S. Ct. at 2184. Neither the statutory scheme nor circumstances of arrest were materially different from those here.[3]

In defendant's case, he was arrested for a violation of § 4.23(a)(1), permitting a BAC test as a search incident to arrest under *Birchfield*. Although there is a distinction between the concentration of alcohol in the blood and the degree of driving impairment caused by alcohol, the distinction does not justify the rule that defendant seeks. Defendant may be correct that field sobriety tests would have been better evidence of BAC than the evidence that the rangers were able to collect. But probable cause does not require the best conceivable evidence. I decline defendant's invitation to return us to a pre-*Birchfield* state of affairs, in which refusal to submit to

---

[3] Defendant also cites *Arizona v. Gant*, 556 U.S. 332 (2009), for the proposition that a search incident to arrest must be related to the crime of arrest. ECF No. 17 at 2-3. *Gant* is not on all fours with defendant's case; it involved a search of a vehicle, not a person. *Gant*, 556 U.S. at 351. Regardless, defendant cannot win under *Gant*. The search here, a BAC test, *is* related— even if not as precisely as defendant would like—to the crime charged in Count 1 (impaired driving).

testing (this time around, field sobriety tests) could allow evasion of drunk-driving controls. Since there was probable cause for defendant to be arrested for impaired driving under § 4.23(a)(1), a breath test search incident to that arrest is proper under *Birchfield* without a separate probable cause finding tied more closely to BAC, and defendant's motion must be denied.

**Order**

For the reasons stated in this opinion, defendant's motion to dismiss Count 5, ECF No. 11, is denied.

IT IS SO ORDERED.

Dated:   September 30, 2020                              _____
                                                         UNITED STATES MAGISTRATE JUDGE

No. 204.